

DEC - 6 2013

CLERK, U.S. DISTRICT COURT
RICHMOND. VA

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**TYRONE B. HENDERSON, SR.,**
*on behalf of himself and others*
*similarly situated,*

      **Plaintiff,**

v.

      Civil Action No: 3:13 c v 812

**US SEARCH, LLC,**

      **JURY TRIAL DEMANDED**

**SERVE:**    **Arnold M. Miller, Registered Agent**
           **US Search, LLC**
           **712 W. Broad Street, #3**
           **Falls Church, VA  22046**

      **Defendant.**

## CLASS COMPLAINT

COME NOW, the Plaintiff, Tyrone B. Henderson, Sr., on behalf of himself and all similarly situated individuals, and for his Class Complaint, he states as follows:

### INTRODUCTION

1.     Tyrone B. Henderson, Sr. (hereinafter "Plaintiff") brings this class action against Defendant to obtain relief for himself and the classes he proposes to represent for violations of the federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*

2.     Defendant operates as a unified consumer reporting agency that compiles, maintains and sells information on consumers on a nationwide basis.  Defendant sells public records regarding consumers.  It then sells consumer reports to the potential employers and other users. Defendant however pretends and incorrectly claims that its data is not FCRA governed,

that it is not a consumer reporting agency and that it is not required to provide any of the statute's many consumer protections.

3.      Plaintiff, who has been through a multi-year ordeal to clear his good name that had been mixed with that of a stranger and felon of similar name, wrote to a number of the most prevalent reporting agencies, including data brokers such as US Search, to try and determine what if anything was reported.  However, when he wrote to US Search, Defendant would not permit his purchase or access to his report and information, and certainly not below the ceiling of $11.50 permitted as a charge by a reporting agency to a consumer.

4.      Plaintiff brings a class claim under 15 U.S.C. § 1681g.  The Plaintiff requested his consumer disclosure from the Defendant and a list of all inquiries made to the Defendant for his report.  The Defendant does not provide or permit such FCRA consumer disclosures.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.  Venue is proper in this Court under 28 U.S.C. § 1391(b) as the Defendant regularly does business in the district and division.

6.      Plaintiff is a citizen of Richmond, Virginia and maintains all of the documents relevant to this dispute at his home in Richmond, Virginia.

7.      Defendant is a Delaware Corporation with a principal place of business in Washington.  It has contracted to supply services or things in the Commonwealth of Virginia.

8.      Defendant regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the Commonwealth of Virginia.

2

9. Upon information and belief, Defendant is a limited liability company doing business in the State of Virginia.

## PARTIES

10. Plaintiff is a natural person and "consumer" as protected and governed by the FCRA.

11. Defendant operates as a nationwide consumer reporting agency and is governed by the FCRA.

12. According to Defendant, "US Search Background Checks include the most up to date data available. Reports include basic data including current contact information plus comprehensive background data including address history, property ownership, aliases and associates, civil judgments, liens and bankruptcies, as well as nationwide and state specific criminal checks."

13. Defendant serves thousands of customers nationwide, from small businesses to Fortune 100 companies, by providing comprehensive screening services.

14. Defendant is, "a consumer reporting agency which [for the purpose of furnishing consumer reports] for employment purposes [...] compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment[.]" 15 U.S.C. § 1681k(a).

15. Defendant collects and assembles personal information on United States residents and then evaluates, markets, publishes, distributes and/or sells the information that it gathers to employers, consumers and virtually anyone else. Plaintiff and other Class members' personal information, as described below, is viewable for a fee on Defendant's website, ussearch.com

(herein, their "profiles," "consumer reports," or "reports").

16. Defendant purchases information about consumers obtained from other third party sources that themselves have obtained, compiled and maintained this data for FCRA governed purposes.

17. Defendant admits that it supplies consumer reports to customers that use the report or are expected to use the report to make employment decisions. Not only on its website, but also on its Revised Preliminary Proxy Statement filed with the United States Securities and Exchange Commission (SEC), Defendant states that it "expects that companies will perform more comprehensive background checks on their employees. US Search provides a range of employment and background check services, including criminal record checks, employment and education verifications, professional reference checks, credit and motor vehicle record checks, and drug screening." Information the US Search reports about itself demonstrates that it knows and expects that consumer reports it creates and its products are intended to be used, will be used, and are used, to make employment-related decisions. Available at http://www.sec.gov/Archives/edgar/containers/fix049/1083087/000089843003002341/dprer14a. htm at 67-71 (last visited December 5, 2013). In its SEC filing, Defendant states: US SEARCH's objective is to become the leading provider of Internet-based employment screening and background information services to businesses, governments and individuals. US SEARCH believes that pre-employment and verification services will become automated through technology in a similar manner to how payroll processing and applicant tracking were automated in the past. US SEARCH makes it possible to not merely screen employees before they are hired, but to perform periodic checks on an automated basis. *Id.* at 68.

4

18.     At relevant times Defendant offered and/or continues to offer third-parties at least three available options to purchase such personal information: as self-styled by Defendant, the full file would be contained in its "advanced background" profile, which it will not furnish to a consumer unless he or she pays $39.95.

19.     Defendant's "advanced background" or "background check" profile is marketed as "our biggest and most complete report about a person" and contains information on relatives, neighbors, marriage & divorce, associates, properties, bankruptcies, tax liens, civil judgments, lawsuits and state criminal search results in addition to the information on an advanced people search profile.

20.     Defendant offers other profile options for purchase, which reveal additional information about Plaintiff and other Class members.  For example, a "property report" profile containing information on ownership, land value, assessed value, improvements value, and property characteristics is or at relevant times has been available for $11.95 on ussearch.com. An "expert background plus nationwide criminal" profile is available for $79.95 on ussearch.com.  It also markets "social network" and "email" searches.

21.     In addition to its originating consumer reporting agency sources, Defendant claims that it assembles, collects and evaluates this personal information about Plaintiff and other Class members from "multiple premium people search databases, [and] over two billion records from public records, including national, state, and municipal records." http://www.ussearch.com/consumer/people-search/ (last visited Dec. 5, 2013).  Defendant does not specify the exact source of any information posted on Plaintiff or other Class members' profiles.

5

22.     While much of the information used to form these profiles comes from public records, Defendant collects this personal information from sources, many of which are difficult to find, using processes and techniques that are unavailable to consumers, and creates a unique profile which is far different, and far more than a "white pages" search.   Defendant itself explains its unique process of assembling information that is not available to the average consumer:

> By cross-referencing and comparing information from many different sources over many years, complex search algorithms sift through and verify data, narrowing the thousands of bits of information down so that they relate to the one person being looked for.

http://www.ussearch.com/consumer/people-search/ (last visited Dec. 5, 2013).

23.     Notwithstanding a hollow disclaimer by Defendant to the contrary, Plaintiff and other Class members' profiles posted on Defendant's website and the above-described information are used by third-parties for FCRA governed purposes.   Employment guides even list Defendant as a "leading online provider" of employment and employee background checks. http://www.employmentverificationguide.com/firms.html (last visited Dec. 5, 2013).   Further, Defendant is considered a preeminent resource for private investigators to complete, amongst other things, employment screening. http://www.einvestigator.com/links/background_check.htm (last visited Dec. 5, 2013).

24.     Defendant knows and/or reasonably should expect that its reports are used for employment related, collection or other purposes governed by the FCRA.

25.     Upon information and belief, Plaintiff alleges that one or more reports have been furnished by Defendant to a third party within the five years immediately preceding the filing of this action.

26.     Pursuant to Defendant's ongoing business practice, it did not inform Plaintiff and other Class members when it assembled, evaluated, marketed, published, distributed and/or sold Plaintiff and other Class members' personal information.

27.     Moreover, Defendant does not allow Plaintiff or other Class members to view their own respective profiles – or to see if one or more profiles exist in their names – on ussearch.com without paying such unlawful charges for each name and profile search.

28.     Defendant does not have systems in place to receive requests pursuant to the FCRA or applicable law for their profiles or from information about from where their profiles were collected.  Instead, for example, Defendant issues mechanized responses to consumers that do not acknowledge or have means to account for such requests.

29.     Defendant has required and, as a practice and policy, continues to require Plaintiff and other members of the Class to purchase their own profiles in order to view their own profiles.   Therefore, in order to view their own profiles (which Defendant has collected, assembled, evaluated, marketed, published, distributed and/or sold to the public on its website as described above), a consumer would each individually have to purchase their own advanced background profiles for $39.95.

## FACTUAL ALLEGATIONS FOR HENDERSON

30.     Plaintiff Tyrone B. Henderson, Sr. had suffered a series of rejections for employment based on inaccurate background checks furnished by multiple consumer reporting agencies.  He had sought legal advice, disputed those reports and even commenced litigation about them.  Nevertheless, new reports continued to surface showing the inclusion of felony records for an out-of-state stranger with a similar name.

7

31.     As a result, Mr. Henderson attempted to determine and dispute the content of his consumer file with each database that he discovered warehoused and sold criminal background checks.

32.     On December 8, 2011, Mr. Henderson wrote to U.S. Search, LLC and requested a copy of his full consumer file, including a list of all companies who requested or received his consumer report.

33.     In addition, in that same correspondence, Mr. Henderson disputed inaccurate information (the inaccurate attribution of a Pennsylvania felony conviction of a similarly named stranger) that he believed Defendant maintained in its file.

34.     Neither Defendant nor anybody on behalf of Defendant conducted an investigation upon receipt of Henderson's dispute.

35.     Defendant did not provide Henderson a copy of his consumer file.

36.     Mr. Henderson offered to and was willing to pay $11.50, which amount has been determined to be "reasonable" under federal law previously by the Federal Trade Commission and now by the Consumer Financial Protection Bureau, to obtain a copy of the his consumer report from US Search. Defendant did not provide a copy of Mr. Henderson's consumer report for $11.50.

37.     Defendant's website demanded $39.95 from Mr. Henderson in order to supply him with his consumer report.

## FACTS COMMON TO ALL CLASS MEMBERS

38.     Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the

8

regulations promulgated by the Federal Trade Commission and Consumer Financial Protection Bureau.

39.     Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

40.     Despite knowing of these legal obligations, Defendant acted at least negligently in breaching its known duties and deprived Plaintiff and other members of the class of their rights under the FCRA.

41.     In the alternative, Defendant recklessly violated the FCRA in the manners herein alleged.

42.     Plaintiff alleges that Defendant's conduct as alleged herein was consistent with its established and systematically executed procedures and policies for compliance with the FCRA.

## CLAIMS FOR RELIEF

### COUNT ONE - VIOLATION OF THE FCRA § 1681g(a)
### (CLASS ACTION)

43.     Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

**The § 1681g(a) Class**

44.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Henderson brings this action for himself and on behalf of a class of individuals that did not receive their consumer disclosure for $11.50 or less when they requested it (the "1681g No Disclosure Class"), and is initially defined as follows:

> All natural persons residing in the United States (a.) who requested their own consumer information from US Search, (b.) within five years next preceding

December 6, 2013 through and during the pendency of this action, and (c.) to whom US Search, Inc. did not provide a disclosure for $11.50. Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, and any judge assigned to hear this action.

45.     **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

46.     **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class. Without limitation, the total focus of the litigation will be Defendant's uniform conduct and procedures, whether Defendant disclosed the inquiries in its consumer disclosures, whether it was required to do so, and whether Defendant acted willfully in its failure to design and implement procedures to assure compliant delivery and/or timing of this information. Even the appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. §1681n is a common question.

47.     **Typicality. FED. R. CIV. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class and Subclass member. As go the claims of the individual Plaintiff so will go those of the class and subclasses. There are no material differences in the law or material facts for the claims of the Plaintiff from those of the class and subclasses. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class.

48.     **Adequacy. FED. R. CIV. P. 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the

members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and they intend to prosecute this action vigorously. Plaintiff and his Counsel will fairly and adequately protect the interests of members of the Class.

49. **Fed. R. Civ. P. 23(b)(2)**. In all regards material to this claim, Defendant acted or refused to act on grounds that apply generally to the class and to each subclass. Plaintiff seeks injunctive relief for himself and for the class to compel Defendant's FCRA compliance as to past requests (providing the consumer a full file disclosure as the law requires) and in all future requests as to each class member. Further, Plaintiff also seeks a declaration that Defendant's conduct alleged herein was unlawful and did violate 15 U.S.C. § 1681g(a).

50. **Fed. R. Civ. P. 23(b)(3)**. Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class and Subclass individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just

one case.

51.     **Fed. R. Civ. P. 23(c)(4)**.  Plaintiff also brings this action as a liability-only issue certification class action under 15 U.S.C. § 1681o to the extent the Court or fact-finder concludes that Defendant did not recklessly violate 15 U.S.C. §1681g(a), but did negligently do so.

52.     Defendant's failure to provide a consumer disclosure to consumers for $11.50 or less (or at all) violated 15 U.S.C. § 1681g(a)(1) as to Henderson and other members of the Section 1681g(a) Class.

53.     The conduct, action, and inaction of Defendant was reckless, rendering Defendant liable for the greater of actual damages for money paid above $11.50 or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

54.     In the alternative, the conduct, action, and inaction of Defendant was negligent, rendering Defendant liable pursuant to 15 U.S.C. § 1681o, with a separate trial for actual damages if established.

55.     Plaintiff and other members of the putative class are entitled to recover costs and attorney's fees, as well as appropriate injunctive and declaratory relief from Defendant, in a manner and an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiff and the Class Members pray for relief as follows:

a.     That an order be entered certifying the proposed Class under Rule 23(b)(1), 23(b)(2), 23(b)(4) and 23(c)(4) of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class;

b.     That the Court order appropriate injunctive and declaratory relief as pled;

c.     That judgment be entered for the class against Defendant for the greater of actual damages for money paid above $11.50 or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, for issue (liability) only certification and judgment for the class.

d.     That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and,

e.     That the Court grant such other and further relief as may be just and proper.

f.     **TRIAL BY JURY IS DEMANDED**

TYRONE B. HENDERSON, SR.

By: _____

Dale W. Pittman, VSB #15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
Telephone: (804) 861-6000
Fax: (804) 861-3368
E-mail: dale@pittmanlawoffice.com

Leonard A. Bennett, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Phone: (757) 930-3660
Fax: (757) 930-3662
E-mail: lenbennett@clalegal.com

13

Susan Mary Rotkis, VSB #40963
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
(757) 930-3660 - Telephone
(757) 930-3662  - Facsimile
Email: srotkis@clalegal.com

*Attorneys for Plaintiff and Class*

14